## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NAVICO, INC., ET AL. | § | |
| | § | |
| v. | § | Case No. 2:16-CV-190-JRG-RSP |
| | § | |
| GARMIN INTERNATIONAL, INC., ET AL. | § | |

## MEMORANDUM ORDER

Before the Court is Defendants Garmin International, Inc. and Garmin USA, Inc. ("Garmin")'s Opposed Motion to Transfer This Action to The Northern District of Oklahoma Pursuant to 28 U.S.C. § 1404 and Opening Brief In Support (Dkt. No. 12) ("Garmin's Motion to Transfer"), to which Plaintiffs Navico Inc. and Navico Holding AS ("Navico") filed a Response in Opposition to (Dkt. No. 23), Garmin filed a Reply to (Dkt. No. 24) and Navico filed a Sur-Reply to (Dkt. No. 26). As set forth below, the Court **DENIES** Garmin's Motion to Transfer.

## I.     BACKGROUND

Navico Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 4500 South 129th East Avenue, Suite 200, Tulsa, Oklahoma 74134. (Dkt. No. 1 at 1, para.2; Dkt. No. 12 at 2). Navico Holding AS is a corporation organized and existing under the laws of Norway, with its principal place of business at Nyåskaiveien 2, 4370 Egersund, Norway. (Dkt. No. 1 at 1, para. 3; Dkt. No. 12 at 2). Both Garmin International, Inc. and  Garmin USA, Inc. are companies organized and existing under the laws of the State of Kansas, and have a principal place of business at 1200 East 121st Street, Olathe, Kansas 66062, with approximately 3,000 employees there. (Dkt. No. 1 at 1-2, paras. 4-5; Dkt. No. 12 at 2; Dkt. No. 12-3, Exhibit 1 at 1, paras. 2-3). In 2012, Garmin opened a marine facility in Tulsa, Oklahoma, which now has approximately 17 employees. (Dkt. No. 12 at 2; Dkt. No. 12-3, Exhibit 1 at 1, para. 5).

Both Garmin International, Inc. and Garmin USA, Inc. also maintain a registered agent in Texas at the address of National Registered Agents, Inc., 1999 Bryant Street, Suite 900, Dallas, Texas 75201-3136, and both companies are also wholly owned subsidiaries of Garmin Ltd., a Swiss corporation whose shares are publicly traded on the NASDAQ stock exchange. (Dkt. No. 1 at 1-2, paras. 4-6).

On June 4, 2014, Navico filed a patent infringement case against Garmin in the U.S. District Court for the Northern District of Oklahoma, alleging infringement of U.S. Patent Nos. 8,300,499 ("the '499 patent"), 8,305,840 ("the '840 patent"), and 8,605,550 ("the '550 patent"). (Dkt. No. 12 at 2-3; Dkt. No. 12-5, Exhibit 3, Complaint of *Navico, Inc., et al v. Garmin Int'l, Inc., et al,* N.D. Okla. Case No. 14-cv-0303-JED-TLW, later Case No. 14-cv-0303-CVE-TLW when transferred from District Judge John E. Dowdell (JED) to District Judge Claire V. Eagan (CVE), with Magistrate Judge T. Lane Wilson (TLW) remaining on the case).

On June 9, 2014, Navico sued Garmin in the U.S. International Trade Commission ("USITC") alleging that Garmin was importing products that infringe the same three above-mentioned '499, '840 and '550 patents. (Dkt. No. 12-6, Exhibit 4; Dkt. No. 12-7, Exhibit 5; Dkt. No. 12-8, Exhibit 6, Various Documents of *In the Matter of Certain Marine Sonar Imaging Devices, Including Downscan and Sidescan Devices, Products Containing the Same, and Components Thereof,* Investigation No. 337-TA-921).

On July 2, 2015, USITC Administrative Law Judge David P. Shaw issued an "Initial Determination" ("ID") that Garmin did not infringe any of the three above-mentioned '499, '840 and '550 patents. (Dkt. No. 12 at 3; Dkt. No. 12-7, Exhibit 5).

On December 1, 2015, USITC Commissioner Lisa R. Barton issued a "Final Determination" ("FD") and Exclusion Order partially reversing USITC Administrative Law Judge David P. Shaw's ID to find that Garmin had infringed valid claims of two of the three asserted patents: the '840 and '550 patents. (Dkt. No. 12 at 3; Dkt. No. 12-8, Exhibit 6).

On February 10, 2016, both parties appealed the USITC FD from Commissioner Lisa R. Barton to the Federal Circuit: resulting, on February 11, 2016, in Appeal No. 2016-1752 or 16-1752 (*Garmin International v. ITC*) and Appeal No. 2016-1533 or 16-1533 (*Navico Inc. v. ITC).* (Dkt. No. 12 at 3; Dkt. No. 12-9, Exhibit 7).

On January 15, 2016, the Northern District of Oklahoma stayed N.D. Okla. Case No. 14-cv-0303-CVE-TLW pending the Federal Circuit's decision and rendering of an opinion on the appeals. (Dkt. No. 12 at 3; Dkt. No. 12-13, Exhibit 11).

On February 17, 2016, the Federal Circuit ordered that both appeals be treated as companion cases and assigned both of them to the same merits panel, to be heard on the same day by the same judges. (Dkt. No. 12 at 3; Dkt. No. 12-10, Exhibit 8). On January 10, 2017, both appeals were argued before the Federal Circuit.[1]

This current action was filed on March 4, 2016, with Navico alleging that Garmin infringed the recently issued U.S. Patent Nos. 9,223,022 ("the '022 patent") (issued December 29, 2015) and 9,244,168 ("the '168 patent") (issued January 26, 2016), which are different patents from the three ('499, '840 and '550) patents asserted in the Northern District of Oklahoma action. (Dkt. No. 1 at 3, para. 13; Dkt. No. 23 at 4-5).

---

[1] Also on January 11, 2017, the Federal Circuit heard argument on a related Appeal by Garmin, Appeal No. 2016-2584 or 16-2684 (*Garmin International, Inc. v. ITC*), relating to whether modification of the USITC's Exclusion Order changed what Garmin was allowed to import. Fed. Cir. Appeal No. 16-2584.

## II.    RELEVANT LAW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2006).  The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009).  The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.  The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*").  Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more

convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'"  *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## III.    ANALYSIS

Garmin argues that venue is proper in the Northern District of Oklahoma not merely because Garmin's accused products are sold there, but also because Garmin has a marine facility in Tulsa.[2] (Dkt. No. 12 at 7). Garmin further contends that Navico's complaint alleges no connections to the present District apart from Garmin's product sales through the same network of authorized dealerships that Garmin uses nationwide. *Id.*

In response, Navico asserts that both parties are worldwide companies with diverse and widespread operations and that despite requesting transfer to Oklahoma, Garmin is a Kansas company, admits its primary facilities and most of its documents are located in Kansas, and that it conducts its research and development in Kansas, with the sonar products at issue in this case being imported from Taiwan. (Dkt. No. 23 at 2).

---

[2] Garmin also alleges that "there can be no dispute that this action could have been brought in the Northern District of Oklahoma where litigation involving similar patents, technology and accused products – brought by Navico itself – is still pending." However, because this is a different case involving different patents, the Court will restrict its analysis just to the patents and technology in the present case.

Furthermore, Navico points out that Garmin does not have any connections to the proposed transferee venue (the Northern District of Oklahoma) apart from a "marine facility" in Tulsa, Oklahoma where the three named inventors of the asserted '022 patent – Aaron Coleman, Jeffrey W. Hanoch, and Brian Maguire – work now, having formerly worked for Navico, and who also all live in Broken Arrow, Oklahoma, which is within the Northern District of Oklahoma. (Dkt. No.12 at 4; Dkt. No. 23 at 2). However, Navico argues that Garmin failed to mention that the personnel in its Tulsa "marine facility" were allegedly "walled off" from working on Garmin's marine sonar products (which have the key "transducer" component of the accused products here), and that the accused products at issue in this case were designed and developed in Kansas. (Dkt. No. 23 at 2-3).

The Court will now turn to weighing the private and public interest factors in order to ascertain whether a transfer to the Northern District of Oklahoma is warranted here.

A.    **Private Interest Factors**

1.    **Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Garmin contends that much or all of the discovery already taken in the Northern District of Oklahoma action will be relevant here because that action involved similar patents asserted and Navico took document and deposition discovery in Oklahoma regarding the specific product design at issue here. (Dkt. No. 12 at 8). However, as Navico points out, Garmin admits that its "primary facilities and most of its documents" are not located in the Northern District of Oklahoma but in "Olathe, Kansas." (Dkt. No. 12 at 8; Dkt. No. 23 at 6-7).

Garmin also has stated that it "primarily conducts research and development for its marine products in its Olathe facility.") (Dkt. No. 12-3, Exhibit 1, at 2, para. 6). Navico also argues that Garmin has not identified any of its own documents as being located in Oklahoma with specificity or evidentiary support, and even though Navico may have a facility in Oklahoma, that does not explain how that facility affects Garmin's ease of access to evidence. (Dkt. No. 23 at 7-8). Therefore, Navico argues that this factor does not support transfer, since the proposed transferee district of the Northern District of Oklahoma does not have the pertinent documents from the Defendant, here Garmin, and the ease of access and associated costs for Garmin to gather and produce relevant documents is effectively the same in this District as it would be in the Northern District of Oklahoma. On balance, because in patent cases the Court looks to the location where the accused infringer keeps its documents (Dkt. No. 26 at 2), and because evidence here establishes that the documents relevant to the accused products and technology are kept in Olathe, Kansas, this factor weighs slightly against transfer.

### 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

Garmin contends that potential witnesses are located around the country and the world, and that it is not aware of any relevant non-party witnesses located in either Texas or Oklahoma or within the subpoena power of either Court. (Dkt. No. 12 at 9). However, Navico asserts that Barry Stokes, located in Granbury, Texas (which is approximately 220 miles away from Marshall, Texas), is likely to be a testifying non-party fact witness in the present case. (Dkt. No. 23 at 3). Garmin disputes this. (Dkt. No. 24 at 2-3). Yet, Navico points out that Garmin deposed Stokes in Texas, knew Stokes was a non-party witness because Navico reimbursed Stokes' travel costs, and Stokes testified in the USITC that Navico's technology was a "complete game changer," rebutting Garmin's obviousness arguments (which Garmin intends to also raise here); thus, Stokes will be a likely witness in this case as well. (Dkt. No. 23 at 3; Dkt. No. 26 at 2).

While Stokes is more than 100 miles from Marshall, he is within the trial subpoena power of this Court under Rule 45. For this reason and also because there are no third-party witnesses in Oklahoma, the Court finds that this factor weighs slightly against transfer.

### 3.     Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Diamond Grading Techs. v. Am. Gem Soc'y,* No. 2:14-cv-1161-JRG-RSP, 2016 WL 1271568 (E.D. Tex. Mar. 31, 2016); *Saint Lawrence Comm. LLC v. LG Elecs., Inc.,* No. 2:14-cv-1055-JRG, 2015 WL 7854738 (E.D. Tex. Mar. 20, 2014); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time with overnight stays, an increased probability of meal and lodging expenses, and time away from their regular employment. *Portal Technologies LLC v. Yahoo! Inc.,* No. 2:11-cv-440-JRG, 2012 WL 3242205, at *4 (quoting *Volkswagen I,* 371 F.3d at 205). "A district court should [also] assess the relevance and materiality of the information the witness may provide." *Genentech*, 566 at 1343; *see also ThinkTank One Research, LLC v. Energizer Holdings, Inc.,* No. M-15-0389, 2015 WL 4116888, at *2 (E.D. Tex. July 7, 2015) (the movant "must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover"). However, even though there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information," the movant must still provide enough information to allow the Court to make the required assessment. *Genentech* at 1343-44.

First, Garmin cites various cases not included in their Table of Authorities for the "100-mile rule", which stands for the proposition that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008). (Dkt. No. 12 at 9-10). Then, Garmin argues that the "100-mile rule" applies here because all of the inventors named on the asserted '022 and '168 patents live in Oklahoma, more than 100 miles from this District and will face "real and avoidable burdens," including "monetary expense and lost productivity costs incurred by Garmin" but also "personal costs associated with being away from work, family and community," should they "be required to travel to this District for trial in this action, which can be reduced by transferring this action to Tulsa." (Dkt. No. 12 at 10).

In response, Navico argues that Garmin fails to meet the burden of showing potential witnesses having "more than relevant and material information" because although Garmin specifically mentions the named inventors that live in Oklahoma – all of whom are party witnesses because 3 out of 4 of them are now Garmin's employees – Garmin has provided no hint of their expected testimony. (Dkt. No. 23 at 9). Navico further contends that Garmin is incorporated in Kansas, and have their principal place of business in Kansas – not Oklahoma, and Garmin has admitted that it offers for sale and sells the accused products in this District and maintains a network of authorized dealers in this District as well. *Id.* Also, Navico points out that Garmin has a small facility in Tulsa, Oklahoma (with approximately 17 employees vs. approximately 3,000 employees in Kansas) and that Garmin's "primary facilities and most of its documents are in Olathe, Kansas." *Id.* at 9-10.

Moreover, Navico asserts that because the distance from Kansas to Texas is not appreciably more than the distance to Oklahoma – meaning that traveling to either will require "travel time," "meal and lodging expenses," and overnight stays" – Garmin has not demonstrated that the slight additional distance for its party witnesses (whom Garmin has not even identified) supports transfer. Navico further argues that the more important non-party witnesses, who carry greater weight in the analysis, do not support transfer to Oklahoma because the likely non-party witnesses for Garmin's inequitable conduct defense of the '022 patent will be the attorney(s) that handled the prosecution of the patent, who are located in Charlotte, North Carolina, which is as close to this Court as to the Northern District of Oklahoma Court. *Id.* at 10. Furthermore, Navico contends that likely party witnesses for infringement, such as Garmin's transducer design engineer Troy Simonton, are all in Kansas – not Oklahoma – because Kansas is where Garmin has "its primary facilities," "most of its documents" and where Garmin "primarily conducts research and development for its marine products." *Id.* Finally, Navico asserts that one such non-party witness expected to testify as to patent validity is in Texas, Mr. Barry Stokes, discussed above. Thus, Navico argues that this District is much more convenient than Oklahoma.

Based on the above evidence and arguments, the Court finds that this factor weighs only slightly in favor of transfer, mainly because: (i) the potential non-party witnesses for inequitable conduct reside in Charlotte, North Carolina, which is slightly closer to Marshall, Texas (roughly 879 miles) compared to Tulsa, Oklahoma (roughly 1,027 miles), (ii) the potential non-party witnesses for infringement are located in Olathe, Kansas, which is only slightly farther from Marshall, Texas (roughly 517 miles) compared to Tulsa, Oklahoma (roughly 220 miles) and (iii) one identified non-party witness, Mr. Stokes, is located in Granbury, Texas, which is clearly closer to Marshall, Texas (roughly 217 miles) than Tulsa, Oklahoma (roughly 341 miles).

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Garmin argues that even though the issues here in the present action and in the Oklahoma action are not identical, but are closely related, the relevant case law compels a transfer to the venue of the prior pending lawsuit involving similar facts, transactions or occurrences: the Northern District of Oklahoma. (Dkt. No. 12 at 10). Garmin also states that it anticipates that the non-infringement arguments in this action will be similar to Garmin's arguments in the Oklahoma action because Navico has accused the same line of products in both cases pertaining to the same area of "downscan" sonar technology, e.g. the new Navico design includes most of the features of the previous design, the main new difference being that the new design is tilted at a 16-degree angle. *Id.* at 11. Garmin also contends that similar invalidity arguments will be made in this case, involving many of the same prior art references, because all asserted patents relate to the same "downscan" technology. Thus, with "so much cross-over in the infringement and invalidity arguments and evidence," Garmin argues, "it makes practical sense for the cases to be litigated in the same district."

In response, Navico contends that despite Garmin's characterizations, the present action is not closely related to the Oklahoma suit, and it certainly is not related to an extent that would warrant transfer, at least because the currently asserted '022 and '168 patents are completely different than the asserted '499, '840 and '550 patents from the Oklahoma suit, the fact that the Oklahoma suit is currently stayed pending resolution of the USITC appeals by the Federal Circuit, and this case will involve different evidence and facts than the Oklahoma case. (Dkt. No. 23 at 11-12). Furthermore, Navico argues that the Court should not condone Garmin's attempt to transfer their case to Oklahoma in the apparent hope of having this case stayed alongside the existing Oklahoma litigation. *Id.* at 12.

The Court agrees with Navico that a "stay of this case would merely delay justice as to issues that are not intertwined with the Oklahoma case." *Id.* Transferring this case to the Northern District of Oklahoma only have it stayed would also be contrary to judicial efficiency, as a *Markman* hearing has already been held in this case by this Court on claim terms from the asserted '022 and '168 patents, which are again completely different than the asserted '499, '840 and '550 patents from the Oklahoma litigation. Therefore, the Court finds that this factor weighs against transfer**.**

**B.      Public Interest Factors**

**1.       Administrative Difficulties Flowing From Court Congestion**

The "speed with which a case can come to trial and be resolved" may be a factor in the transfer analysis. *Genentech,* 566 F.3d at 1347. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is also a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). However, this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. Here, Garmin argues that even though both this District and the Northern District of Oklahoma have a similar average disposition time (making this factor neutral as to transfer), transferring the case to Oklahoma would preserve judicial resources because significant litigation has already occurred in the Northern District of Oklahoma, including a claim construction hearing (however, no *Markman* Order has been published as the case was stayed shortly after the hearing), depositions, multiple discovery disputes and dispositive motion practice. (Dkt. No. 12 at 11-12). Furthermore, Garmin argues that the Northern District of Oklahoma is already familiar with the technology and the issues. *Id.* at 12.

However, Navico responds that the time to trial in this District is significantly faster than the Northern District of Oklahoma for patent cases, and thus, this factor weighs strongly in favor of preserving Navico's choice of venue in this Court. (Dkt. No. 23 at 12). Navico also points out that the Judicial Caseload statistics cited by Garmin show that the median time to trial in this court during the past four years ranges from 18.5 to 27.9 months, while the Northern District of Oklahoma has had only three patent cases proceed to trial – with an average time to trial in those cases of 41.6 months. *Id.* at 12-13. Furthermore, Navico notes that the Oklahoma patent suit has been pending for over 22 months and is currently stayed pending the Federal Circuit's ruling of the USITC appeals, thus projecting a similarly extensive time to trial and an ever extended time to trial in the case this case gets transferred to Oklahoma and then stayed as well. *Id.* at 13. As to Garmin's statement that the Oklahoma Court "is already familiar with the technology and the issues," Navico argues that no substantive rulings were ever issued before the stay despite the various motions and briefs, including *Markman* briefs, summary judgment briefs, motions to dismiss and a motion to disqualify an expert. *Id.* Navico finally argues that Garmin overstates the overlap between this case and the Oklahoma case, because the present case concerns different patents than the ones involved in the Oklahoma litigation, and no testimony or other evidence has ever been adduced as to these patents. *Id.* at 14. On balance, the Court finds that this factor weighs against transfer**.**

### 2.     Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. Garmin contends that because Navico's U.S. headquarters and Garmin's marine facility are in Tulsa, the inventions were created in Tulsa, and all inventors are in the Tulsa area, venue is proper in the Northern District of Oklahoma. (Dkt. No. 12 at 12).

Garmin also argues that there is little connection, if any, between Navico's infringement claim and this District, and that Navico's allegation that Garmin sells the accused products in this District is no different from Garmin's sales operations worldwide. *Id.* In response, Navico states that Garmin is a Kansas corporation with a principal place of business in Kansas, states that its accused products were designed in Kansas, manufactured in Taiwan, and admittedly offered for sale and sold in this district via a network of authorized dealers maintained by Garmin in this District. (Dkt. No. 23 at 14). Navico further points out that Garmin's only purported connection to Oklahoma is the existence of a 17-person facility in Tulsa. *Id.* However, Navico asserts that Garmin has "walled off" its Oklahoma engineers from any design and development for the pertinent marine sonar products related to this case – therefore, Navico argues, Garmin's activities do not create any more local interest in Oklahoma than in this Court. *Id.*

Considering the above evidence, the Court finds this factor slightly favors transfer. Whatever local interest the Northern District of Oklahoma has in this case – the most compelling likely being the fact that some of the named inventors reside in Tulsa and Navico has its U.S. headquarters in Tulsa – are more or less countered by the bulk of Garmin's operations being in Kansas (for infringement), with other pertinent events occurring in North Carolina (for alleged inequitable conduct) and worldwide (for validity). (Dkt. No. 26 at 5). Nonetheless, the fact that Garmin sells its accused products in this District should not be overlooked – as this District also has a local interest in the accused technology.

### 3.    Familiarity of the Forum With the Law that Will Govern the Case

Both parties agree that this factor is neutral as to transfer. (Dkt. No. 12 at 12; Dkt. No. 23 at 15). The Court agrees.

**4.** **Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

Both parties also agree that this factor is neutral as to transfer. (Dkt. No. 12 at 12; Dkt. No. 23 at 15). The Court agrees.

## IV. CONCLUSION

Considering the foregoing, the Court finds that Garmin has not carried its burden to show that the Northern District of Oklahoma is a clearly more convenient forum for this action. As a result, the Court hereby **DENIES** Garmin's Motion to Transfer (Dkt. No. 12).

**SIGNED this 5th day of February, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE